## J. HENRY HERRMAN AND CAROLINE HERRMAN *vs.* ELIZA COMBS.

*Bills and notes*: *executions; question for jury; consideration; parol evidence; signature; waiver of proof under Code, Art. 75, sec. 24, sub-sec. 108. Practice*: *evidence; order.*

In suits between the payee and maker of a note, the parties may show all the facts and circumstances surrounding its execution and relating to the existence of a consideration.

p. 44

But where a consideration is shown, the legal import and operation of the note, as such, can not be contradicted by parol testimony.                                        p. 44

The execution of a note is a question of fact for the determination of the jury.                                        p. 47

Whether a note is a forgery, or whether it was obtained by proper means or influence, is a question for the jury.      p. 47

After the closing of a defendant's case the plaintiff is entitled to introduce no other evidence except it be in rebuttal.  p. 48

Under Art. 75, sec. 24, sub-sec. 108, of the Code of 1912, if the signature of a note is not denied by the pleas, proof of that fact is considered as waived.                          p. 48

*Decided December 5th, 1912.*

Appeal from the Circuit Court for Baltimore County (HARLAN, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Edward L. Ward* (with whom was *John S. Biddison* on the brief), for the appellants.

*Robert F. Stanton* and *Z. Howard Isaac,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an action brought by the appellee in the Circuit Court for Baltimore County upon the following note:

"$2000.                    GARDENVILLE, Feby. 1st, 1908.

Two years after date we promise to pay to the order of Eliza Comes Two Thousand Dollars............at............ value received.

J. HENRY HERRMAN.
CAROLINE HERRMAN."

No...........Due with interest.

Eighteen exceptions were taken to the rulings upon the evidence and two to the rulings upon the prayers, the first exception being to the rejection of a prayer to take the case from the jury at the close of the plaintiff's evidence, and the twentieth to the rulings on the prayers at the close of the case.

The *narr.* contained the common counts for money payable and a special count upon the note, and the pleas were the general issue. There was a verdict for plaintiff and judgment thereon for $2060, from which the defendants have appealed.

At the trial, there was an agreement of counsel that Mr. Stanton, counsel for plaintiff, had in his possession the original note filed with the *narr.* which had been withdrawn under an order of Court, and this note was offered in evidence and read to the jury, and the plaintiff rested. Thereupon the defendant submitted a prayer that there was no evidence legally sufficient to entitle the plaintiff to recover which was rejected, and this constitutes the first exception, but as this prayer was renewed at the close of the case, after defendants had proceeded with testimony in their own behalf, that exception was thereby waived.

J. Henry Herrman being sworn, testified that Caroline Herrman was his wife, and before their marriage lived with her uncle John Combs, the husband of the plaintiff, but now deceased in January, 1909. He was then asked: "Will you tell us whether or not you, or your wife, or both of you borrowed any money from Mr. Combs, and if so when?" to which the plaintiff objected, and the objection was sustained, and this is the second exception. This question was asked without any proffer of testimony to show how that inquiry could be relevant or material in a suit for money alleged to be due Eliza Combs, and *at this stage of the case* the ruling was correct.

The witness then further testified that at the time of the death of John Combs, neither he nor his wife owed anything to Eliza Combs, and he was then asked "to explain to the jury why that note was given, and when, and all the circumstances connected with the giving of it," counsel for the defendants stating to the Court "that they expected to prove that about 1887, John Combs, plainiff's husband, loaned the defendants $2,500; that in 1895 they paid him $500 on account, leaving due $2,000, and that in 1905 John Combs gave the female defendant a paper releasing her from the payment of this balance. That after John Combs' death, the plaintiff who was his executrix. demanded from the defendants the money borrowed from her husband, and when told by them that Mrs. Herrman had a release which had been mislaid, she suggested that they give her a note for the $2,000, as though the money was due her individually; and that if the lost receipt was found, the note could be destroyed and they need not pay the $2,000; that this suggestion was accepted and the note in suit was given accordingly." This question and proffer was objected to, and the Court refused to permit the question to be answered. This constitutes the third exception.

This was in effect an offer to prove that there was no consideration whatever for the note in suit, and under sections 47 and 77 of Article 13 of the Code of 1912, total or partial

failure of consideration is a defence against any person not a holder in due course. We think it is quite clear, *in view of the proffer made in connection with the question propounded* that there was error in this ruling. It has been held in numerous cases in this Court that in suits between the payee and maker of a note, the parties may show all the facts and circumstances surrounding its execution and relating to the existence of a consideration, although where a consideration is shown, the legal import and operation of the note, as such, cannot be controverted by parol testimony. *Cline* v. *Miller,* 8 Md. 275; *Ingersoll* v. *Martin,* 58 Md. 72; *Bradford* v. *Harris,* 77 Md. 154; *Spies* v. *Rosenstock,* 87 Md. 16; *Fisher* v. *Diehl,* 94 Md. 112; *Burke* v. *Smith,* 111 Md. 627. The language of the Court in *Spies* v. *Rosenstock, supra,* may be cited in illustration of the principle declared in all. It was there said: "The defendant was permitted to state the circumstances under which the note was given. It is clear there was no error in this ruling, for it is settled that as between two immediate parties, as here, between the maker and payee, while the note itself is *prima facie* evidence of the consideration, the question of consideration is always open."

The fourth exception was to the refusal to permit this question: "Now Mr. Herrman, tell us when this note was signed?"

The fifth exception, after this witness, without objection, had said the note was executed at his home, was to the refusal to permit this question: "You say there was no consideration for the note. Tell us how you came to give it?"

The sixth exception, after the witness had again testified there was no consideration for this note, was to the refusal to permit him to say "why then was the note given."

After Mrs. Herrman had testified that she remembered the day when the note was signed in the dining-room of her home and had stated who was present at that time, and that she neither then nor at any other time received any money or promise of money from Mrs. Combs and that she could

fix the actual date upon which the note was signed the twelfth exception was taken to the refusal to permit this question: "Kindly tell us what that date was?"

In each of these exceptions it was sought to show some of the circumstances attending the execution of the note, the consideration of which was denied, and for the reason given as applicable to the third exception there was error in each of these rulings.

Mr. Herrman being asked if he had paid any interest on this note, said, "one payment only at the time the note was given," and he was then asked whether Mrs. Combs, after the giving of the note, ever returned it to him, and the refusal to allow that question constitutes the seventh exception. This may properly be classed with the third, fourth, fifth, sixth and twelfth exceptions, since at the time it was given, according to the proffer of testimony excluded, the note was to be returned upon production of a release, and the inquiry therefore related directly to a circumstance attending the execution of the note, and the question of its consideration, and for the same reason it was error to exclude the question.

Mr. Herrman further testified that after giving the note he did not see it again until September, 1911, when Mrs. Combs came to his house with the note, and demanded a new note; that he told her then he had a paper to prove what he had before told her about a release, and she gave him the note, but the same afternoon she returned with her counsel, Mr. Stanton,. who was shown the paper referred to, and he said it was no good and to let the lady have the note," and it appears from the testimony of Mrs. Herrman that it was then surrendered to Mrs. Combs. The alleged release was then shown to Mr. Herrman who identified it as the paper he had referred to. His counsel then asked if he knew by whom the paper was signed, to which defendant's counsel objected, that the paper spoke for itself. Plaintiff's counsel then offered the paper in evidence, which is as follows:

"I hereby certify this 18th day of March, 1905, that the $2,000 which I have heretofore given to my niece, Caroline Herrman (wife of J. Henry Herrman) is a gift from me to her, and also intended for compensation for her services rendered to me while she lived at my house, and that I have no claim against her for any portion of said amount so given and paid to her."

Witness the signature and his mark:

His

John (X) Combs

Mark

J. HENRY HERRMAN.

(Signed)

And upon plaintiff's objection to its admission, it was excluded. This is the eighth exception.

The witness was then asked if he knew whose signature was attached to this paper, and whether he saw it executed by the person purporting to have signed it, but he was not allowed to answer. This is the ninth exception.

He was then asked if he knew who witnessed the signature purporting to be that of the person who appeared to have executed the paper, and he was not allowed to answer. This is the tenth exception. Mrs. Herrman being put on the stand was shown this paper and was asked if she was able to state by whom it was signed and she was not allowed to answer. This is the thirteenth exception.

The object of all this rejected testimony was to prove the execution of this paper by John Combs, and enable the defendants to offer it in evidence. If it was a genuine paper, and not a forgery, it was proper evidence, and a good defense to an action on the note, if shown that it referred to the same $2,000 which defendants offered to prove was secured by the original note for $2,500 given by them to John Combs. The evidence excluded in the eighth, ninth, tenth and thirteenth exceptions was offered in a confused order, but taken together it was an offer to prove by competent testimony the signature of John Combs and of the attesting witness, and this proof being given, to put the paper in evi-

dence. Its execution was a question of fact for the jury, and there was error in each of these rulings. The proof offered could not be excluded upon the *assumption* that the paper was either a forgery or was obtained by any improper means or influence, these questions being for the jury and not for the Court.

When Mrs. Herrman was on the stand, after testifying that she lived with her uncle eleven years before her marriage, which occurred when she was 22, she was not allowed to testify whether she worked during that period for him and what was the character of the work done. This was material as bearing upon the statement contained in the alleged release, that it was in consideration of her services. The form of the question is somewhat leading but if properly framed we see no objection to the inquiry. This constitutes the eleventh exception.

In the fourteenth exception Mrs. Herrman was testifying to the interview with Mrs. Combs in September, 1911, when she said she demanded a new note, and she was asked what she or her husband told her in reply to this demand and she said, "We told her we had found this paper and could not give her a new note," and upon motion of plaintiff's counsel the answer was stricken out. We can perceive no reason why this should have been done.

The defendants having closed their case, the plaintiff herself was called, and upon being sworn, defendants objected to her testifying except in strick rebuttal of the testimony offered by them, but their objection was overruled and this is the fifteenth exception. This objection may have been premature, and if it can be supposed the Court meant only that she was a competent witness in rebuttal, the ruling would be correct, but if it meant, as it apparently did mean, that she was not to be confined to rebutting testimony, it was clearly error. Reference to the sixteenth and seventeenth exceptions taken by the defendants during the testimony of Mrs. Combs, and which cover nearly seven pages of the record, show that she was allowed to go at length into

the consideration of the note in question, and all the circumstances attending its execution, although the defendants had not been allowed to enter into that field of inquiry at all. The specific questions objected to by defendants in these two exceptions, but allowed by the Court. were directed to the consideration of the note in suit, and both objections should have been sustained, because this was not rebuttal testimony. None but rebutting testimony was then proper, and it is difficult to conceive how an inquiry which had been consistently and emphatically refused upon defendants' offer, could be thrown open to plaintiff in rebuttal.

Plaintiff's rebutting testimony being closed, J. Henry Herrman was called in surrebuttal, and in the eighteenth and nineteenth exceptions was not permitted to contradict the testimony of Mrs. Combs, that ten or twelve years previously she had given defendants through her husband $2,000, which constituted the consideration for this note. It does not appear upon what ground this right was denied and we are at a loss to imagine one.

The twentieth exception is to the ruling on the prayers which the reporter will set out. We discover no error in any of the prayers. The defendant's prayer to take the case from the jury which was renewed at the close of the whole case, it is presumed was based upon the failure to prove the signatures of the defendants to the note sued on, but these signatures not having been denied in the pleas, proof of these signatures was not required. Article 75, section 24, subsection 108, of Code of 1912.

But, because of the errors in the rejection of defendants' offered testimony, and in the admission of plaintiff's testimony in rebuttal, the judgment must be reversed and a new trial be awarded.

> *Judgment reversed, with costs to the appellants above and below, and new trial awarded.*